UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWIN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18 CV 984 RWS |
| | ) |
| JESSICA ENGLE, RN, in her individual | ) |
| capacity, KENNETH HALL, in his | ) |
| individual capacity, JENNIFER DOWD, | ) |
| f/k/a JAN MARTIN, in her individual | ) |
| capacity, & DIANE MAUK, in her | ) |
| individual capacity, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM & ORDER**

Edwin Jones is a 61-year-old inmate in the Missouri Department of Corrections' (MODOC) Eastern Reception, Diagnostic and Correctional Center (ERDCC). On October 28, 2016, while experiencing symptoms of a stroke, Jones went to the medical bay at the ERDCC, self-declared a medical emergency, and waited for nearly an hour before receiving care. On June 15, 2018, Jones filed this lawsuit, alleging deliberate indifference to his medical needs by the corrections officer and healthcare providers working in the ERDCC medical bay. The healthcare providers—Jessica Engle, Diane Mauk, and Jennifer Dowd—each agreed to a settlement with Jones, the details of which they are currently finalizing [ECF No. 90]. Accordingly, this Memorandum and Order pertains only to

Defendant Kenneth Hall's motion for summary judgment.  For the reasons below, I will grant C.O. Hall's motion for summary judgment.

## I. Background

On October 28, 2016, Edwin Jones, pushed in a wheelchair by fellow inmate Eric Campbell-Bey, presented at the ERDCC medical bay and approached the front desk in the waiting area.  Seated at the front desk were Corrections Officer Kenneth Hall and Certified Nurse Assistant Jennifer Dowd.  Jones self-declared a medical emergency and told C.O. Hall that he believed he was having a stroke.  At the time, Jones showed visible signs of medical distress, including shaking, a drooping mouth, and an inability to control his body movements or sit up straight.  Because Jones could not write, C.O. Hall completed Jones's entry in the medical bay's self-declare sign-in log and wrote that the time was 10:59 a.m.

At the front desk in the medical bay's waiting area, there is a document titled "Self Declare Guidelines" that lists examples of medical emergencies, including strokes and heart attacks.  See Self Declare Guidelines, ECF No. 70-7.  When an inmate self-declares a medical emergency, "immediate triage" is to be "conducted by a nurse in direct communication with the offender, and the offender will be provided health services according to the needs of his heath condition."  See IS11-41 Emergency Health Services, MODOC Institutional Services Procedure Manual, ECF No. 70-4, III(C)(4),(6).

For nearly an hour after he self-declared a medical emergency, and while exhibiting signs he was having a stroke, Jones sat in the waiting room at the medical bay without receiving treatment for his medical condition.  Multiple medical bay staff members, including a registered nurse, interacted with Jones and denied him the emergency care he requested.  C.O. Hall was present in the waiting area during these interactions and, according to Jones, witnessed them.  Campbell-Bey pleaded with C.O. Hall to find help for Jones.

The exact time is disputed, but at least 53 minutes after C.O. Hall logged Jones's arrival in the medical bay, a nurse acknowledged that Jones was suffering from a medical emergency, and Jones was transferred to Parkland Health Center.  There, doctors determined that Jones had suffered a stroke and that too much time had passed for a tissue plasminogen activator shot to ameliorate long-term damage.  Jones suffered significant harm as a result of the stroke, including difficulty moving his left leg and left arm.  He now spends half of his time in a wheelchair.

## II.     Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial

responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof.  Id. at 324.  In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy.  Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

### III.  Analysis

C.O. Hall argues he is entitled to summary judgment because (a) Jones failed to exhaust his administrative remedies, and (b) C.O. Hall is entitled to qualified immunity.  Viewing the evidence in the light most favorable to Jones, I find that there is a genuine issue of material fact as to whether Jones exhausted his administrative remedy but also that C.O. Hall is entitled to qualified immunity.

**a. Exhaustion**

Failure to exhaust is an affirmative defense, which C.O. Hall has the burden to establish.  See Minter v. Bartruff, 939 F.3d 925, 928 (8th Cir. 2019).  Because

4

there remains a genuine dispute of material facts about Jones's exhaustion efforts, I will not grant C.O. Hall's summary judgment motion on exhaustion grounds.

The Prison Litigation Reform Act mandates that "[a]n inmate must exhaust all available administrative remedies before bringing a § 1983 suit." Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015). "'[T]he boundaries of proper exhaustion' depend on the prison's specific administrative requirements." Townsend v. Murphy, 898 F.3d 780, 784 (8th Cir. 2018) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). MODOC has a three-step administrative grievance process: an informal resolution request (IRR), a grievance, and a grievance appeal. Each step has time limits that govern the timeliness of filing; the inmate must file the IRR within fifteen days of the incident, a grievance within seven working days of the prison's response to the IRR, and a grievance appeal within seven days of receiving the response to the grievance. See Wewerka v. Roper, No. 4:09CV1973 CDP, 2010 WL 4628093, at *2 (E.D. Mo. Nov. 8, 2010), aff'd, 431 F. App'x 517 (8th Cir. 2011). After the inmate receives a response to the appeal, the inmate has exhausted the grievance procedure. See id.

C.O. Hall argues that Jones failed to exhaust his administrative remedies in two ways: (1) Jones did not address wrongdoing by C.O. Hall in the administrative grievance process, and (2) Jones's grievance appeal was untimely. Upon reviewing the record, I find that Jones sufficiently preserved his right to file a

5

lawsuit against C.O. Hall. First, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones v. Bock, 549 U.S. 199, 219 (2007). Rather, the exhaustion inquiry requires me to determine whether Jones has "complete[d] the administrative review process in accordance with the applicable procedural rules." Id. at 218 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

Because "[n]othing in the [Missouri Department of Corrections] policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process," Edwin Jones was not required to specifically name C.O. Hall in his grievance. Jones, 549 U.S. at 218. Even still, Jones identified C.O. Hall as one of the people present in the medical bay waiting area while Jones waited for medical treatment. The IRR and Grievance filings each contain detailed accounts of Jones's experience in the medical bay on October 28, 2016 [ECF No. 51-2]. Although Jones's IRR and Grievance filings primarily focus on the conduct of the nurses and certified nurse assistants in the medical bay, I find that Jones's grievance gave the MODOC a "fair and full opportunity to adjudicate" Jones's claims against C.O. Hall. Woodford, 548 U.S. at 90.

I also find that there is a question of material fact as to whether Jones filed a timely appeal. C.O. Hall argues that Jones's grievance appeal was untimely, but

6

Jones provides evidence that he submitted his appeal on time.  C.O. Hall's argument relies on the date the grievance office *received* the appeal (March 9, 2017) as the filing date.  Jones claims he *filed* his grievance appeal on March 6, 2017;  his claim is supported by the sworn affidavit of Charles Smith, another inmate.  See ECF No. 70-19 (reporting that Smith heard the grievance officer assigned to Jones say to Jones, "if you have someone ask me about it, I will let them know that you turned your Grievance Appeal into me on March 6, 2017").  If Jones submitted his application on March 6, 2017, it was timely.

Moreover, Jones himself previously challenged MODOC's determination that his appeal was untimely through a grievance appeal.  In response to Jones's appeal, MODOC wrote that Jones's grievance was duplicative because he "received the Grievance Appeal response and exhausted the grievance process." See ECF No. 51-2, p. 13.  Viewing the facts in the light most favorable to Jones, I cannot conclude as a matter of law that Jones failed to exhaust his administrative remedies.  C.O. Hall is not entitled to summary judgment on exhaustion grounds.

    **b.**    **Qualified Immunity**

C.O. Hall also argues he is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson

7

v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Jones responds that C.O. Hall is not entitled to qualified immunity, because C.O. Hall violated Jones's clearly established Eighth Amendment rights.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (citing Helling v. McKinney, 509 U.S. 25, 31 (1993)).  A prison official can violate a prisoner's Eighth Amendment rights if he is "deliberately indifferent to the inmate's serious medical needs."  Id. (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir.1997). To sustain a deliberate indifference claim, Jones must make "a two-part showing that (1) [he] suffered from an objectively serious medical need, and (2) [C.O. Hall] knew of the need yet deliberately disregarded it."  Id. (citations omitted).  Based on the factual record before me, I find that C.O. Hall was not deliberately indifferent to Jones's serious medical need.  Jones suffered from an objectively serious medical need and C.O. Hall knew of the need, but C.O. Hall did not deliberately disregard it.

Jones and C.O. Hall agree that Jones self-declared a medical emergency when Jones presented at the medical bay on October 28, 2016.  The facts also

8

establish that Jones suffered a stroke that day.  C.O. Hall also does not contest that, in the medical bay, Jones exhibited symptoms of a stroke, that Jones and Campbell-Bey requested assistance for Jones, or that C.O. Hall was present in the medical bay waiting area when other prison staff disregarded Jones's emergency.  C.O. Hall instead argues that his actions did not constitute a deliberate disregard of Jones's medical condition.  He contends that he was not trained in recognizing or diagnosing symptoms of a stroke and that he followed proper procedure by notifying a nurse of Jones's self-declared emergency.

A lack of medical training is not itself a defense to liability under the deliberate indifference standard.  While "deliberate indifference must be measured by the official's knowledge at the time in question," Schaub, 638 F.3d at 915 (citations omitted), the symptoms Jones exhibited were so severe that "even a layperson could have understood" that his condition was serious.  Williams v. York, 891 F.3d 701, 704 (8th Cir. 2018).  I find that C.O. Hall knew of Jones's serious medical need.

However, C.O. Hall's actions in response were not "equivalent to criminal-law recklessness."  Schaub, 638 F.3d at 914.  I assess the factual record of what C.O. Hall did—and failed to do—based on C.O. Hall's knowledge at the time in question.  This knowledge included Jones's self declaration, C.O. Hall's

9

observation of Jones's symptoms, Campbell-Bey's statements to C.O. Hall, and C.O. Hall's observation of how medical bay staff responded.

According to Jones, after C.O. Hall completed Jones's entry on the self-declare sign-in sheet, C.O. Hall left the waiting area. See Pl.'s Statement of Additional Material Facts (SAMF), ECF No. 65, ¶ 24. When he returned, C.O. Hall asked Campbell-Bey to push Jones to the waiting area designated for inmates who self-declare medical emergencies, approximately ten feet from the desk where C.O. Hall sat. Id. ¶ 25. This substantially aligns with C.O. Hall's statement that he told a nurse of Jones's medical emergency. See Def.'s Statement of Material Facts, ECF No. 50, ¶ 14.

After C.O. Hall told a nurse of Jones's self declaration, Jones did not immediately receive treatment. See id. Ex. B, ECF No. 51, 42:9-23. C.O. Hall remained seated nearby while at least one nurse interacted with Jones and declined to treat him. Id. ¶ 28. While it may have been negligent for C.O. Hall not to follow up or advocate for more urgent treatment for Jones, C.O. Hall's failure to further assist Jones was not deliberately indifferent. C.f. Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

The Eighth Amendment did not require C.O. Hall to second-guess the nursing staff members who spoke with Jones and declined to immediately treat him.

Jones cites a section of MODOC's Emergency Health Services Procedures Manual, which states that a staff member who "reasonably believes an offender is not receiving appropriate health services care . . . should report their concerns to the chief administrative officer without delay." See IS11-41 Emergency Health Services, MODOC Institutional Services Procedure Manual, ECF No. 70-4, III(A)(6). However, established law, and not MODOC's policies, determines whether C.O. Hall was deliberately indifferent to Jones's serious medical need. See Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.") (citation omitted).

C.O. Hall did not persist in seeking help for Jones when others declined to treat him, but he "did take some action to respond" to Jones's medical emergency. Gregoire v. Class, 236 F.3d 413, 418 (8th Cir. 2000). With "hindsight's perfect vision," it is clear that C.O. Hall could have done more to bring attention to Jones as he suffered from a stroke. Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011). However, even Jones's account of what happened that day demonstrates it was reasonable at the time for C.O. Hall to defer to the decisions of the medical

11

personnel in the medical bay.  C.O. Hall was not deliberately indifferent to Jones's serious medical needs.

## IV. Conclusion

C.O. Kenneth Hall's conduct did not violate Edwin Jones's clearly established statutory or constitutional rights.  As a result, C.O. Hall is entitled to qualified immunity, and I will grant his motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kenneth Hall's Motion for Summary Judgment [48] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Edwin Jones's claims are **DISMISSED** as to Defendant Kenneth Hall.

A separate judgment is filed this date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2020.